**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| **IN RE** | |
| **CHARBEL S. JOSEPH** | **CASE NO. 23-51021** |
| **DEBTOR** | **CHAPTER 7** |
| **PAUL A. RANDOLPH,** **ACTING UNITED STATES TRUSTEE** | **PLAINTIFF** |
| **AND** | **ADV. NO. 24-05011** |
| **THOMAS J. YOUNG** | **INTERVENING PLAINTIFF** |
| **V.** | |
| **CHARBEL S. JOSEPH** | **DEFENDANT** |

**MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT TO PLAINTIFF**

**Introduction**

Paul A. Randolph, Acting United States Trustee ("the UST"), filed a complaint to bar Debtor/Defendant Charbel S. Joseph ("Debtor") from receiving a chapter 7 discharge. [ECF No. 1 (the "Complaint").] After the close of discovery, the UST moved for a summary judgment on his claim under § 727(a)(3) based on Debtor's alleged failure to preserve records sufficient to allow creditors to ascertain his financial condition.[1]  [ECF No. 23 (the "Motion").]  Debtor objected to the Motion [ECF No. 25 (the "Objection")], and Trustee filed a Reply [ECF No. 26 (the "Reply").]  The Court heard oral argument on October 29, 2024.  For the following reasons, the Court finds that the UST is entitled to a summary judgment on the § 727(a)(3) claim.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule     " and references to the Federal Rules of Civil Procedure appear as "Civil Rule    ."

## Background

Debtor filed a chapter 7 petition on September 1, 2023, and his schedules and related documents on September 26, 2023.  [Case No. 23-51021, ECF Nos. 1, 16, 17.][2]  Debtor's petition identifies him as the sole proprietor of an unincorporated business known as Pro Builds Construction.  The petition states Debtor owns assets valued at $0-$50,000 and liabilities of $10,000,001-$50 million.  His Statement of Exemption from Presumption of Abuse under § 707(b)(2) stated Debtor's debts are not primarily consumer debts.

Also on September 26, Debtor moved to compel William Johnson to appear for a Bankruptcy Rule 2004 examination and to produce documents.   [Case No. 23-51021, ECF No. 15.]  That motion states Mr. Johnson possesses Debtor's financial records, having performed certain services for Debtor related to the construction business.  The Court granted the motion. [Case No. 23-51021, ECF No. 20.]  With his Objection to the Motion, Debtor filed an Affidavit stating Mr. Johnson produced eight pages of documents and four paper receipts on October 2, 2023.  [ECF No. 25-1 ("Debtor's Affidavit") ¶ 10.][3]  Debtor never moved to compel further production or sought other relief as to Mr. Johnson (e.g., file a turnover action under § 542(a)).

On October 18, 2023, Debtor testified at a § 341 meeting.  [Case No. 23-51021, ECF No. 18.]  The UST then moved to conduct Debtor's Bankruptcy Rule 2004 examination on November 21, 2023, stating the UST "desires to examine [Debtor] regarding his accumulation of over $10 million in debts against $21,095 in assets, his business operations, and his accounting records."  [Case No. 23-51021, ECF No. 31 ¶ 4.]  The UST sought authority to issue a subpoena

---

[2] Documents cited from the main case record are referenced as "[Case No. 23-51021, ECF No.   .]"  Unless otherwise defined, documents cited from the adversary proceeding are referenced as "[ECF No.   .]"  The parties did not attach Debtor's petition and schedules, and certain other filings in Debtor's main case referenced herein, to the Motion, Objection, or Reply.  However, a court may take judicial notice of its own court records.  FED. R. EVID. 201(b)(2); *United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir. 1977).

[3] The eight pages (noting labor hours on a construction job) are in the record.  [ECF No. 25-3.]  The receipts are not.

to Debtor to produce eleven categories of financial records.  [*Id.* ¶ 5.]  The Court granted the

relief requested on December 1, 2023, and the UST noticed Debtor's examination to occur on

March 27, 2024.  [Case No. 23-51021, ECF Nos. 35, 40.][4]  After holding the examination, the

UST filed an adversary proceeding to bar Debtor from receiving a discharge on April 11, 2024.

[Case No. 23-51021, ECF No. 41; *see also* ECF No. 1 (the "Complaint").][5]

The Complaint contains two counts.  In Count 1, the UST asks to bar Debtor's discharge

under § 727(a)(5) based on an alleged failure to satisfactorily explain "the loss or deficiency of

assets to meet his liabilities."  [Complaint ¶ 26.]  In Count 2, the UST asks to bar Debtor's

discharge under § 727(a)(3), alleging he "concealed, destroyed, mutilated, falsified, or failed to

keep or preserve recorded information from which his financial condition or business

transactions might be ascertained."  [*Id.* ¶ 28.]  Debtor filed an Answer denying that the

requested relief is appropriate.  [ECF No. 11.]  In the Answer, Debtor admits he did not produce

documents to the UST in compliance with the Order compelling him to participate in a

Bankruptcy Rule 2004 examination but states he "testified as to the existence of many boxes of

business records that are not in the Debtor's possession or control.  An individual named William

Johnson of London, Kentucky has possession of these records pertaining to the [Debtor's]

business transactions but has refused to release same to the [Debtor]."  [*Id.* ¶ 7.]  Debtor never

amended this admission in his Answer.

The parties took discovery.  UST issued a testimonial subpoena to William Johnson on

May 31, 2024, requiring him to participate in a deposition on June 11, 2024.  [ECF Nos. 14, 15.]

---

[4] Creditor (and later, intervenor) Thomas Young moved to conduct a Bankruptcy Rule 2004 examination of Debtor on December 27, 2023, which the Court granted on January 3, 2024.  [Case No. 23-51021, ECF Nos. 37, 38.]  It is unclear from the record whether a separate examination occurred or if Mr. Young simply participated in the UST's examination.

[5] UST received extensions to file a complaint through April 26, 2024.  [Case No. 23-51021, ECF Nos. 35, 39.]

The subpoena did not require the production of records.[6]  The UST served written discovery

demands on Debtor on June 13, 2024.  [ECF No. 17.][7]

The UST filed the Motion seeking a summary judgment on Count 2 of the Complaint (to

bar Debtor's discharge for a failure to maintain records under 11 U.S.C. § 727(a)(3)) on

September 24, 2024.  The Motion does not seek a summary judgment on Count 1.

## Undisputed Material Facts

The Motion and the Objection reflect that several material facts are not in dispute:

1. [Debtor] filed for relief under chapter 7 of the United States Bankruptcy Code on September 1, 2023 in the United States Bankruptcy Court for the Eastern District of Kentucky.  Complaint, A.P. Doc. 1, ¶ 7; Answer, A.P. Doc. 11, ¶ 2.

2. On September 26, 2023, [Debtor] filed his Schedules and Statement of Financial Affairs under penalty of perjury.  Complaint ¶ 8; Answer ¶ 2.

3. On March 7, 2024, [Debtor] testified under oath at an examination authorized by this Court pursuant to Fed. R. Bankr. P. 2004.  Complaint ¶ 10; Answer ¶ 2.

4. [Debtor] possesses a High School Diploma and an Associate Degree in Architecture Technology.  Exhibit 1 (Excerpts from 2004 Exam) p.10.

5. For at least five years before filing for bankruptcy relief, [Debtor] operated a construction operation in his personal capacity, without any associated LLC or other entity, under the assumed name Pro Builds Construction.  Complaint ¶ 14; Answer ¶ 6.

7. For at least five years prepetition, [Debtor] has not maintained any bank accounts. Instead, [Debtor] operated his construction operation on a cash-only basis.  Complaint ¶ 15-16; Answer ¶ 6.

11. Among the documents [Debtor] provided to the [UST] were pictures of 139 separate checks payable to [Debtor] (hereinafter "139 checks") dated between January 5, 2022 and August 10, 2023 that total $1,421,337.  Complaint ¶ 18; Answer ¶ 6.  Exhibit 2 (Wright Declaration) ¶ 2.[8]

---

[6] As noted, Debtor was authorized to conduct a Bankruptcy Rule 2004 examination of Mr. Johnson in October 2023, and the UST issued a testimonial subpoena to Mr. Johnson in May 2024.  At oral argument on the Motion, the parties stated Mr. Johnson appeared and offered testimony.  It is unclear whether he testified pursuant to the subpoena, the Order allowing an examination under Bankruptcy Rule 2004, or both.  However, neither party offered his testimony in connection with the Motion.

[7] Debtor attached his discovery responses to his Objection to the Motion.  [ECF No. 25-2.]

[8] The "Wright Declaration" is from John Todd Wright, a "Bankruptcy Auditor in the Lexington Office of the United States Trustee" who "personally reviewed … records provided to [the UST] by [Debtor] in response to a Rule 2004 order and discovery requests[.]"  [ECF No. 23-2.]  Mr. Wright compiled a summary of checks received and cashed,

12. [Debtor] testified under oath at his Rule 2004 examination that the 139 checks represent income to him from January 5, 2022 to August 10, 2023. Exhibit 1 (Excerpts from 2004 Exam) at p. 112.

13. [Debtor] converted the 139 checks to cash.  Complaint ¶ 20; Answer ¶ 6.

14. As opposed to 139 checks totaling $1,421,337, [Debtor] only provided documents supporting disbursements of $65,426, and scheduled deposits to his spouse's bank account totaling $45,540 from January 5, 2022 to August 10, 2023. Exhibit 2 (Wright Declaration) ¶¶ 5-7.

[ECF Nos. 23, 25.]

The Motion also offers another fact the UST claims to be undisputed:

6. [Debtor] has not provided the [UST] with a general ledger or other type of summary accounting records even though he was ordered to do so.  2004 Exam Order, Doc. 33; Complaint ¶ 23; Answer ¶ 8.

Debtor now contends Debtor's Affidavit, tendered with his Objection, puts this fact in dispute.

[ECF No. 25 at 2.]  But Debtor's Affidavit neither states Debtor provided the UST with a general

ledger or other summary accounting records nor explains why he disputes this fact.  And Debtor

never amended his Answer to deny what he already admitted.  Under Sixth Circuit precedent,

admissions in pleadings, including an answer, generally are binding upon the parties and the

Court.  *See Brown v. Tenn. Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980); *see also*

*Ferguson v. Neighborhood Housing Services, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986) ("Once

made, the subject matter of the admission should not be reopened in the absence of a showing of

exceptional circumstances.").  This material fact is not genuinely in dispute.

Further, the Motion sets out (and provided evidence to support) facts the UST contends

are material and undisputed based on (a) admissions made in Debtor's Bankruptcy Rule 2004

examination, and (b) the records Debtor turned over to UST, as explained in the Wright

Declaration.  Those facts are:

---

a summary of disbursements, and a summary of household expenses, by Debtor for the period 1/5/22-8/10/23.  The Motion attaches these compilations.  [ECF Nos. 23-3, 23-4, 23-5.]

8. As of the date of his Rule 2004 examination (March 7, 2024), [Debtor] had not filed federal income tax returns since 2007. Exhibit 1 (Excerpts from 2004 Exam) p. 47-48.

9. [Debtor] has not filed income tax returns for the past seventeen years because his "records are not good," "poor recordkeeping," and "never getting around to it." Exhibit 1 (Excerpts from 2004 Exam) pp. 47-48.

10. [Debtor] has only provided limited check images, images of receipts and cashier's checks payable to others, and scattered documents that could touch on his financial condition. Exhibit 2 [(Wright Declaration)] ¶ 2.

15. From January 5, 2022 to August 10, 2023, [Debtor] was unable to produce documents explaining the disposition of $1,310,371. Exhibit 2 (Wright Declaration) ¶ 7.

The Objection states Debtor disputes these paragraphs but, again, does not explain why. Instead, the Objection generally references Debtor's Affidavit. [ECF No. 25-1.] Debtor's Affidavit is six pages and provides information about Debtor's business, record-keeping and tax-preparation practices, prior litigation, and relationship with William Johnson. Upon review and consideration of Debtor's Affidavit, and as discussed in more detail below, the Court concludes Debtor has not established a genuine dispute exists as to these material facts.

## Analysis

### I.    Jurisdiction and Venue.

This Court has jurisdiction over this proceeding. 28 U.S.C. § 1334(a) and (b). Venue is proper in this District. 28 U.S.C. § 1409. This is a core proceeding. 28 U.S.C. § 157(b)(1) and (b)(2)(J). The parties consent to the Court's entry of final orders.[9]

### II.    Summary Judgment Standard.

A summary judgment should be granted if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a)

---

[9] Thomas Young moved to intervene in this proceeding on April 25, 2024. [ECF No. 9.] Absent an objection, the Court granted the motion. [ECF No. 19.] Mr. Young did not file a pleading including a statement of consent but, at the hearing on the Motion, his counsel advised that he consents to the entry of final orders.

(incorporated via FED. R. BANKR. P. 7056).  A court's task is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue exists when there is

sufficient "evidence on which the [factfinder] could reasonably find for the [nonmovant]."  *Id*. at

252.  The court must view all facts and inferences in the light most favorable to the non-movant.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes a prima facie case to support their motion for summary

judgment, however, the non-movant must do more than simply assert that a material dispute of

fact exists.  Rather, they "must come forward with persuasive evidence to support his or her

claim that there is a genuine factual dispute; that is, the non-moving party must produce evidence

on which the jury could reasonably find for the non-moving party. 'The "mere possibility" of a

factual dispute is not enough.'"  *Bond v. Burson*, No. 3:94-CV-502, 1996 U.S. Dist. LEXIS

22062, at *10-11 (D. Tenn. March 4, 1996) (citation omitted); *see also Poss v. Morris (In re

Morris)*, 260 F.3d 654, 665 (6th Cir. 2001) ("'the nonmoving party has an affirmative duty to

direct the court's attention to those specific portions of the record upon which it seeks to rely to

create a genuine issue of material fact.'"  (citation omitted)).

### III.    The UST Is Entitled to a Summary Judgment on Count 2 of the Complaint Under § 727(a)(3) Owing to Debtor's Failure to Maintain Adequate Financial Records.

####    A.    The elements of the claim.

Under § 727(a)(3), a debtor's discharge must be denied if "the debtor has concealed,

destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

books, documents, records, and papers, from which the debtor's financial condition or business

transactions might be ascertained, unless such act or failure to act was justified under all of the

circumstances of the case."  11 U.S.C. § 727(a)(3).  Because the denial of a debtor's discharge is

a severe remedy, exceptions to discharge are strictly construed in the debtor's favor. *United States v. Storey*, 640 F.3d 739, 743 (6th Cir. 2011).

The Code imposes a duty on the debtor "to maintain and retain comprehensible records" accurately documenting their financial affairs. *In re Juzwiak*, 89 F.3d 424, 429 (7th Cir. 1996). As another court explained:

> to obtain a discharge, a debtor must "keep and preserve" records. Keep and preserve are not synonyms. "'Keep' has the same meaning it would have in phrases such as 'to keep a diary' or to 'keep a record', that is, to maintain a record by entering it in a book. Otherwise the repetition of the word 'preserve' is superfluous, a disfavored result." Keep also means to maintain continuously and methodically. Written information is required such that there are "'accurate signposts on the trail showing what property passed through the debtor's hands during the period prior to his bankruptcy.'"

*Transworld, Inc. v. Volpe (In re Volpe)*, 317 B.R. 684, 690 (Bankr. D.S.C. 2003) (citations omitted).

The party seeking relief under § 727(a)(3) must establish the inadequacy of a debtor's records by a preponderance of the evidence. *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994). If they succeed, the burden on the motion shifts to the debtor to establish any justification for the inadequacy. *CM Temp. Servs., Inc. v. Bailey (In re Bailey)*, 375 B.R. 410, 415-16 (Bankr. S.D. Ohio 2007); *see also Leibowitz v. Tanglis (In re Tanglis)*, 344 B.R. 563, 569 (Bankr. N.D. Ill. 2006) ("Mere testimony from the debtors regarding their version of their financial transactions is insufficient to satisfy the duty imposed by § 727(a)(3), and neither the Trustee nor the court is required to 'reconstruct a debtor's financial situation or take a debtor's word for his financial dealings.'"). "Within this framework, the Court has broad discretion in deciding whether to deny a debtor's discharge under § 727(a)(3)." *Bavely v. Daniels (In re Daniels)*, 641 B.R. 165, 184 (Bankr. S.D. Ohio 2022) (citing *Dolin v. N. Petrochemical Co. (In re Dolin)*, 799 F.2d 252, 253 (6th Cir. 1986)).

In *Daniels*, the court considered granting relief under § 727(a)(3) in a similar context, and provided a succinct summary of how bankruptcy courts approach the issues:

> Whether a debtor has provided adequate records depends on the circumstances of the case, and courts often consider the debtor's "education, business experience, sophistication, or any other relevant factor." Although "not entitled to perfect, or even necessarily complete, records," parties in interest must be given "enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present[."] The records need not take any special form. But the trustee and creditors are not required to reconstruct the debtor's financial history or to speculate as to the debtor's affairs.
>
> Courts typically place a higher burden of recordkeeping on debtors who operate businesses. Indeed, numerous courts have held that to satisfy his disclosure obligations under § 727(a)(3), a debtor may be required to provide not only his own records but also records from closely-held businesses. This is true not only when the debtor has a direct ownership interest in the business, but also when the debtor's "business and personal finances are intertwined." Similarly, "a sophisticated debtor is held to a greater degree of accountability than an unsophisticated debtor."

*Daniels,* 641 B.R. at 184-185 (citations omitted).

### B.   Debtor's significant and continuing failure to file pre-petition tax returns violated his obligation to maintain adequate financial records.

The first argument Trustee raises to satisfy the initial burden of proof—and thereby shift the burden to Debtor—concerns Debtor's admitted failure to file federal tax returns for sixteen years while operating a construction business as a sole proprietorship. UST's Motion cites published opinions for the proposition that a debtor's failure to file tax returns for several consecutive years amounts to a failure to maintain adequate records that, on its own, warrants the denial of the debtor's discharge under § 727(a)(3). [Motion ¶¶ 26, 27, *citing Pher Partners v. Womble (In re Womble)*, 289 B.R. 836 (Bankr. N.D. Tex. 2003) (stating "a debtor's failure to file timely tax returns -- especially for several years in a row -- is a blatant example of a failure to maintain adequate records."), *aff'd*, 299 B.R. 810 (N.D. Tex. 2003), *aff'd*, 108 Fed. Appx. 993 (5th Cir. 2004); *Jou v. Adalian (In re Adalian)*, 500 B.R. 402, 407-08 (Bankr. M.D. Pa. 2013)

(citing *Womble* and explaining "where a debtor has not filed pre-petition tax returns, the trustee

and every creditor is denied potential access to a considerable amount of relevant financial and

other information."); *Daniels*, 641 B.R. at 185–86 (stating courts have "held that a debtor's

failure to file tax returns can amount to a violation of § 727(a)(3)" and "[t]his is especially true

when, as here, the debtor has failed to file tax returns for himself or his businesses for several

years in a row.").][10]  Debtor's Objection does not discuss these cases, let alone offer any

rationale why this Court should not find them persuasive.  At oral argument, Debtor's counsel

did not offer a cogent argument why the Court should not follow these cases.

Debtor's failure to file personal tax returns for sixteen years (2008 to 2023) is outrageous.

This is especially true given Debtor operated a construction business as a sole proprietorship and

received significant income from that work.  At oral argument, the UST advised no case could be

---

[10] Many courts over many years have discussed the significance of a debtor's persistent failure to file personal tax returns in analyzing claims under § 727(a)(3).  *See, e.g., In re Dias*, 95 B.R. 419, 422 (Bankr. N.D. Tex. 1988) (denying discharge under § 727(a)(3) because, *inter alia*, the debtor had not filed tax returns for three years and failed to keep tax records); *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 884 (B.A.P. 6th Cir. 1999) (noting the debtor failed to file tax returns and did not maintain or produce other records "to enable the trustee and creditors to obtain a complete and accurate view of the debtor's financial circumstances."); *Gebhardt v. Gartner (In re Gartner)*, 326 B.R. 357, 377 (Bankr. S.D. Tex. 2005) (stating the debtor's "failure to file tax returns provides another basis for denying [his] discharge under section 727(a)(3) because it prevents creditors and trustees from obtaining important financial information."); *McDow v. Korfonta (In re Korfonta)*, Adv. Pro. No. 09-1228, 2009 Bankr. LEXIS 3930, at *9 (Bankr. E.D. Va. Dec. 1, 2009) (stating that "to the extent a debtor has kept and maintained financial records and information from which a [tax] return can be prepared, the court would not be prepared to hold that mere failure to actually prepare and file the return would constitute" a basis to deny a discharge but "given the legal requirement to prepare and file returns, the failure to do so reasonably supports an inference that the debtor has not kept or preserved the financial records that would enable a return to be prepared."); *Peters v. Michael (In re Michael)*, 433 B.R. 214, 223 (Bankr. N.D. Ohio 2010) (stating "[a]lso problematic, the Defendant, despite having some source of income, has not filed tax returns for many or all of the most recent tax years, extending back to 2005, an omission which elicited this response from one bankruptcy court: 'a debtor's failure to file timely tax returns — especially for several years in a row — is a blatant example of a failure to maintain adequate records.'" (citing *Womble*)); *Mukamal v. Weisenfeld (In re Weisenfeld)*, Adv. No. 09-2526-BKC-AJC-A, 2011 Bankr. LEXIS 1021, at *15 (Bankr. S.D. Fla. March 18, 2011) (denying a discharge under § 727(a)(3) as "[t]he Debtor's failure to, among other things, file tax returns for himself and [his business], and maintain accurate and complete books and records for [the business], prevent the Trustee from ascertaining the true financial condition of the Debtor and [the business] and from properly administering the bankruptcy estates of the Debtor and" the business.); *Stillwater Liquidating LLC v. Gray (In re Gray)*, Adv. Pro. No. 14-02235 (SMB), 2016 Bankr. LEXIS 804, at *12-13 (Bankr. S.D.N.Y. March 15, 2016) (stating "'Income tax returns are quintessential documents from which the debtor's financial condition or business transactions might be ascertained' and 'the persistent failure to file timely tax returns—especially for several years in a row—is a blatant example of a failure to maintain adequate records.'" (citations and internal quotation marks omitted)).

found involving such a lengthy, persistent failure to file tax returns.  The Court also could not

locate such a case through independent research.  The admission that Debtor failed to file federal

tax returns for sixteen years constitutes an adequate basis to conclude the UST met its burden

under § 727(a)(3), thereby shifting the burden to Debtor to justify the inadequacy of his records.

   **C.**    **Debtor otherwise failed to maintain and retain comprehensible records of his
        financial condition.**

The UST's second asserted basis for barring Debtor's discharge under § 727(a)(3)

concerns Debtor's failure to maintain and provide useful financial records.  Section 727(a)(3)

"requires as a precondition to discharge that debtors produce records which provide creditors

with enough information to ascertain the debtor's financial condition and track his financial

dealings with substantial accuracy for a reasonable period past to present." *Wazeter v. Michigan*

*Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (Bankr. W.D. Mich. 1997) (internal citations and

quotation marks omitted).

As with the tax returns, the material facts supporting UST's argument are not in genuine

dispute.  Despite multiple requests, Debtor did not provide the UST with general ledgers or other

summary financial information concerning his sole proprietorship, Pro Builds Construction.

Since at least January 1, 2019, Debtor has not had a bank account, and thus produced no bank

records to the UST.  Debtor operated only in cash in this period—using check cashing businesses

to cash large checks—further resulting in a dearth of financial records.  While Debtor provided

the UST with images of checks he received in a twenty-month period in 2022 and 2023 totaling

$1,421,337, Debtor only provided documentary evidence to the UST to explain $65,426 in

disbursements (other than to his spouse) in this period.  Debtor thus did not provide records to

explain what happened to over $1.3 million in revenue he earned in the twenty months before he

filed his bankruptcy petition.

Debtor's response to the UST's argument is that he did maintain financial records but could not access them for the reasons detailed in Debtor's Affidavit.  This argument goes to Debtor's defense to the Motion (discussed next), not to the evidence the UST tendered to support the Motion.  Simply put, the UST established Debtor did not provide adequate financial records to the UST that accurately document his financial affairs.

### D.    Debtor did not provide sufficient evidence to justify his failure to maintain adequate records to defeat summary judgment.

Because the UST tendered sufficient evidence to shift the evidentiary burden on the § 727(a)(3) claim, the Court now must determine whether Debtor adduced evidence, sufficient to establish a genuine dispute of material fact, that his failure to maintain adequate records is

> justified under the circumstances.  If the lack of records is not adequately explained, the debtor is not entitled to a discharge.  If the nature and extent of the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, [ ]he must show more than that [ ]he did not comprehend the need for them.  The justification must indicate that because of unusual circumstance, the debtor was absolved from the duty to maintain records.

> Courts routinely consider a variety of factors in determining whether the inadequacy of the debtor's records was justifiable. Such factors include the debtor's education, sophistication, business experience, size and complexity of the debtor's business, debtor's personal financial structure, and any special circumstances.

*Wazeter*, 209 B.R. at 230 (alterations in original, internal quotation marks and citations omitted). The only evidence Debtor offered to defeat the UST's Motion is Debtor's Affidavit, which attaches (a) Debtor's responses to written discovery, and (b) eight documents showing time kept for Debtor's employees or subcontractors on a construction job.[11]

---

[11] The eight documents were produced by William Johnson in compliance with the Order granting Debtor's Bankruptcy Rule 2004 examination, purportedly are written by William Johnson, and allegedly "show the hours worked and expenses incurred for the weeks from August 8, 2022 through September 30, 2022 on a job-site in Indiana." [ECF No. 25-1 ¶ 10.]  The records are offered to support Debtor's statement that Mr. Johnson apparently maintained other, similar records for Debtor, which Mr. Johnson has now destroyed or has refused to return.  The documents are no more than a scintilla of evidence that Mr. Johnson had some of Debtor's records and produced them in compliance with the Court's Order.  The eight documents do not create a material dispute of fact regarding

To begin, a debtor's self-serving affidavit, standing alone, is insufficient to satisfy their burden to justify a failure to maintain adequate records on a motion for summary judgment to bar their discharge under § 727(a)(3). *See Farm Credit Mid-Am., PCA v. Tingle (In re Tingle)*, 594 B.R. 396 (Bankr. E.D. Ky. 2018) (Schaaf, J.). In rejecting explanations from debtors that did not maintain records of their farming operations, and instead relied on testimony to explain their transactions to defeat a motion for summary judgment, this Court previously wrote:

> The evidence presented by the [debtors] is almost entirely testimonial explanations for the disappearance of assets. This provides little help under the § 727(a)(3) claim. [One debtor] conducted farming operations during the relevant period, including raising cattle and crops. It is reasonable to expect him to maintain records of sales, particularly because the numbers involved are so large. But, as the subsequent discussion shows, he cannot produce documentation regarding cattle and crop sales, or transfers of equipment used in the farming operations. Further, the [Debtors] had a duty to preserve these records for a reasonable period. *See* [*Crocker v. Stiff (In re Stiff)*, 512 B.R. 893, 898 (Bankr. E.D. Ky. 2014).]

> Testimonial explanations might provide more help under § 727(a)(5), *Stiff*, 512 B.R. at 900, but testimony is not always enough under either section. *See, e.g.*, *Bond v. Burson*, No. 3:94-CV-502, 1996 U.S. Dist. LEXIS 22062, at *9-12 (E.D. Tenn. March 4, 1996) (discussing Sixth Circuit law that requires convincing evidence from the non-moving party). The non-moving party cannot simply refute an argument; it must provide some proof there is a triable issue of fact. *See* Fed. R. Civ. P. 56(c)(1); *see also Sinclair v. Schriber*, 916 F.2d 1109, 1112 (6th Cir. 1990) ("Although the nonmoving party's evidence ... need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts."). A motion for summary judgment is one way to challenge an opposing party to "put up or shut up" on a critical element of the case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1986); *see also Caruso v. Clemmens*, Civil Action No. 5:17-CV-325-KKC, 2018 U.S. Dist. LEXIS 188862, *4-5 (E.D. Ky. Nov. 5, 2018) (summary judgment is appropriate if the non-moving party fails to make a sufficient showing when he bears the burden of proof).

*Id.* at 404-05; *see also Juzwiak*, 89 F.3d at 429 ("[o]ral testimony is not a valid substitute or supplement for concrete written records."); *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami*

---

whether Debtor's failure to keep and preserve the business records of his own sole proprietorship is justifiable under the circumstances.

*Trust*, 541 F. App'x 443, 447-48 (5th Cir. 2013) ("a party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario."); *Lashinsky v. Kresock (In re Kresock)*, Adv. Pro. No. 0:19-ap-00091-BMW, 2020 Bankr. LEXIS 3316, at *31 (Bankr. D. Az. Nov. 24, 2020) ("conclusory statements of fact and self-serving declarations are insufficient to create genuine issues of material fact" in a § 727 action), *aff'd*, BAP No. AZ-20-1270-BSL, 2021 Bankr. LEXIS 3512 (B.A.P. 9th Cir. Dec. 22, 2021); *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000) (to defeat a motion for summary judgment on a § 727(a)(3) claim, "[t]he nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements."). Debtor's Affidavit provides no more than uncorroborated, self-serving statements intended to explain away his failure to maintain written records and provide them to the UST.

Even if the Court were to accept Debtor's Affidavit and the attached written discovery responses, they do not create a genuine issue of material fact concerning whether Debtor has a valid justification for his failures to file tax returns and to maintain and produce financial records in this proceeding. Debtor's Affidavit and responses to written discovery state:

- Debtor had assistance from tax professionals in the 2000s and early 2010s, and some tax returns may have been filed from 2008 to 2012, but the only tax return he could locate was filed for tax year 2007. Post-petition, Debtor tried to retain a tax professional to file tax returns for 2023 and the prior five years, but no professionals were willing to assist him. But he does not state he actually filed his tax returns for 2008 to 2023, nor does not he provide a meaningful explanation why he failed to file sixteen years' worth of tax returns when they were due.

- After Debtor's March 2024 testimony in his Bankruptcy Rule 2004 examination, he found records in his garage going back to 2010 (or earlier) and provided certain additional records to the UST. Debtor does not state that Mr. Wright, the UST's auditor, failed to account for these records in his compilations of information provided.

- Debtor maintained records of income and expenses related to various construction projects.  Debtor offers no detail regarding any income generated or expenses incurred on any specific project.

- William Johnson, working as Debtors' subcontractor (primarily for electrical and light carpentry work), started maintaining some of Debtor's records in 2019, and then kept Debtor's complete records from the fall of 2021 to March 2023.  In response to an interrogatory regarding the oversight Debtor maintained over Mr. Johnson concerning his business record keeping practices, Debtor responded that he "had discussions on a daily basis" with Mr. Johnson from the fall of 2021 through March of 2023 on matters related to certain jobs and worked with Mr. Johnson to generate bids for work.  Debtor also stated: "Mr. Johnson kept the business records in multiple folders, binders and Tupperware containers" and "was adamant about taking these business records home with him every day with the explanation that he was fearful the records would get lost, stolen or there would be a fire in the office trailer."  [ECF No. 25-2 at 7-8.]  But Debtor does not explain how Debtor effectively oversaw Mr. Johnson's record-keeping or how he ensured he had access to his own business records.

- Mr. Johnson refused to return Debtor's records after Debtor failed to pay Mr. Johnson for the work he performed, such that Debtor's documents "are not available due to the conduct and actions of William Johnson."  [*Id*. at 5.]  Debtor offers no corroborating evidence for this statement, including that the only relevant and requested documents Debtor failed to provide to the UST were those purportedly in Mr. Johnson's possession.

In sum, Debtor provided a self-serving affidavit to blame a third party for his failure to keep and preserve his business records.  A debtor cannot evade their duty to maintain records for purposes of § 727(a)(3) by shifting that responsibility to a third party.  *See*, *e.g.*, *Volpe*, 317 B.R. at 693-94 ("A debtor is responsible for keeping accurate business records from which his financial condition can be ascertained - - the duty cannot be delegated."); *Daniels*, 641 B.R. at 191 (rejecting the debtor's attempt to shift the blame for his failure to file tax returns or maintain adequate books because he could not afford to pay his accountants, while paying other obligations).[12]

---

[12] The affidavit also states Mr. Johnson is an "ex-felon."  [ECF No. 25-1 ¶ 8.]  The Court does not accept this uncorroborated statement as true.  But the Court notes Debtor's Affidavit does not attempt to explain why it would be reasonable for Debtor to delegate the primary responsibility to maintain all of the business records for Debtor's construction company to an ex-felon subcontractor who primarily performed electrical and light carpentry work.

Debtor ran a construction business for a significant time period and, thus, should have some sophistication as a business owner. Debtor chose to operate a business that generated significant income and required frequent outlays for expenses without a bank account. Debtor failed to keep the records of his sole proprietorship in a manner sufficient to establish his financial condition with substantial completeness and accuracy. Debtor also failed to file tax returns for a very long period. Debtor did not offer sufficient evidence to create a material dispute of fact to justify these failures, such that a trial would be required. No reasonable fact-finder could find in Debtor's favor on the justification issue based on the evidence presented on the Motion.

### Conclusion

Debtor has not filed federal tax returns since 2007. The UST, Debtor's creditors, and this Court cannot determine his actual financial circumstances based on the documents he maintained and produced. Debtor cannot simply disclaim his personal responsibility to maintain accurate business records for his sole proprietorship.

For these and the foregoing reasons, there is no genuine dispute of material fact, and the UST is entitled to a judgment as a matter of law on his request to bar Debtor's discharge under § 727(a)(3). A separate judgment will be entered accordingly.

16

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Douglas L. Lutz*
**Bankruptcy Judge**
**Dated: Thursday, October 31, 2024**
**(dll)**